UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------X

JOEL F. HOLUBAR,
&
MARIANA H. HOLUBAR,

                        Plaintiffs,

v.

KENT KHOLBERGER;
THE CHASE FREEDMAN-FAMILY TRUST;
&
M/Y CHEROSA, *in rem*,

                        Defendants.

-----------------------------------------------------------X

FILED
CLERKS OFFICE

2004 JUN 21  P 3: 44

U.S. DISTRICT COURT
DISTRICT OF MASS.

03-CV-12404-NG

## AFFIDAVIT OF JOEL F. HOLUBAR IN SUPPORT OF PLAINTIFFS' MOTION

I, Joel F. Holubar, DDS, being duly sworn and warned that willful false statements and the like so made are punishable by fine, imprisonment or both and that such willful false statements may jeopardize the validity of this document, declare and affirm as follows:

I am the first named Plaintiff in matter now at bar and am fully familiar and cognitive of the facts surrounding the case. This Affidavit is presented in support of my Motion to Compel and for Rule 37 sanctions.

1. At all relevant times to this action, my wife and I were the owners of the documented marine vessel "Nordic Star", USCG Documentation Number 957765. Nordic Star is a 42-foot Jersey Dawn Sport Fisherman, with a fourteen (14) foot beam, and a dry displacement weight of approximately 32,000 lbs.

1
1

Jun 15 04 08:49a    Bjorn J. Holubar    1-646-349-4433    p.1
Received: 6/15/04  8:46AM;  1 646 349 4433 -> HOLUBAR;  Page 1

2. I am a USCG approved captain maintaining a "Coast Guard Licensed Operator of Uninspected Passenger Vessel" license.

3. On August 24, 2001, my wife and I were aboard Nordic Star traveling "east" bound in the Cape Cod Canal, a narrow and navigable waterway as defined by U.S.C. Title 33, supervised and managed by the United States Army Corps of Engineers.

4. We were traveling with the current and were entering the Hog Island Channel, the narrowest portion of the Cape Cod Canal.

5. The Hog Island Channel is approximately no more than four hundred (400) feet in width.

6. When we reached the Hog Island Channel in the Cape Cod Canal and rounded a "turn," they became aware of a vessel "west" bound in the Cape Cod Canal.

7. The vessel was the M/Y Cherosa, which upon information and belief is a 147'9" yacht, with a twenty-five (25) foot beam, a registered gross tonnage of two hundred forty two (242), *i.e.*, 484,000 lbs, and a registered net tonnage of one hundred and sixty three (163), *i.e.*, 326,000 lbs.

8. The M/Y Cherosa was west bound traveling against the current.

9. Without right or justification, the M/Y Cherosa was negligently and with reckless abandon being operated at, and traveling in excess of, twenty (20+) knots, which is well in excess of the posted permitted and safe speed as set forth by the U.S. Army Corps of Engineers.

10. The wake, *i.e.*, waves, caused by the M/Y Cherosa's excessive rate of speed, size, and displacement, in addition to the fact that she was traveling against the current, resulted in a wake well in excess of eight (8) feet in height. The wake's waves were of short intervals/intermissions, making their faces steep and abrupt.

11. Kent Kholberger was captaining the M/Y Cherosa at all times in question on August 24, 2001.

12. Upon realizing the size of the wake we took immediate and defensive evasive actions, but were limited in choice due to the size of the wake, close proximity of the M/Y Cherosa and narrowness of the Hog Island Channel.

13. Upon repetitive impact of M/Y Cherosa's wake, we were severely tossed about "like a toy boat in a bathtub", demonstrative of the force and size of the wake.

14. As a result, Nordic Star was physically damaged, gear and equipment, including irreplaceable family memorabilia, were lost and damaged, and my wife and I were physically injured.

15. Immediately following the wakes' impact, I contacted the USCG.

16. Then USCG station attempted to raise M/Y Cherosa on VHF channel 16, however, neither she nor her captain or her crew were monitoring channel 16, or, in the alternative, intentionally chose to disregard the USCG's repetitive hails on VHF channel 16. This is further demonstrative of the M/Y Cherosa's negligent operation.

17. We then began to inspect the damage as we made way to Sandwich Marina, located in the Cape Cod Canal.

18. Upon arrival at the Sandwich Marina, we were met by USCG Officers, who documented and recorded the damage.

19. Upon information and belief the U.S. Army Corps of Engineers and USCG, either jointly or individually, conducted an investigation and determined that the M/Y Cherosa was operated at an excessive rate of speed. Permissive travel time for the Hog Island Channel area against the tide is forty six (46) minutes, whereas the M/Y Cherosa's travel time for the Hog Island Channel area was twenty one (21) minutes. This is less than half the travel time required, thus demonstrative of the M/Y Cherosa's excessive rate of speed.

20. The U.S. Army Corps of Engineers found that M/Y Cherosa's captain should "be cited for negligent operation, excessive speed and wake."

21. On August 28, 2001, Defendant Captain Kent Kholberger was cited by the USCG for "Speeding; Exceeding Minimum Running Time Between Admin. Office & Hog Is.#1 by 25 Minutes."

22. My wife and I have subsequently sought medical attention, incurred pain and suffering, and lost wages as a proximate result of injuries sustained on August 24, 2001, stemming from the M/Y Cherosa's operation.

23. My wife and I have subsequently, and continue to, expend resources and money repairing the damage to Nordic Star, which was a proximate result of the occurrences on August 24, 2001, stemming from the M/Y Cherosa's operation.

24. In Spring of 2002, Defendant Kent Kholberger admitted guilt and remitted the full fine due and payable as a result of his actions and omissions on August, 24, 2001, as set forth above.

25. We brought suit.

26. I am now informed that defendants have sought an extension of time on the eve of their response being due.

27. I am also now informed that defendants, after inquiry by my attorney, did not intend to appear for the scheduled depositions of June 16-18.

28. I took off time from work to attend the depositions, additionally, I have impressed upon my attorneys and they have obliged by responding to the defendants' requests in a timely and expeditious fashion.

29. Due to the delays by defendants and their apparent disregard for the scheduled depositions I have incurred unnecessary costs and losses associated with my medical practice as well as legal fees.

30. I would respectfully request the Court inquire with defendants' counsel as it appears that they refuse to abide by the Court's Scheduling Order as well as my duly and properly noticed depositions – to my economic detriment.

**WHEREFORE**, I respectfully pray the Court GRANT my application and compel Defendants appearance and sanction then in accordance with Rule 37 and award all the costs and all or some of the reasonable attorney fees incurred in this action.

Dated: June 14, 2004          By: _____
                                    Joel F. Holubar, DDS

COUNTY OF SUFFOLK)
STATE OF NEW YORK ).ss

I, JOEL F. HOLUBAR, being duly sworn, hereby deposes and says:

I am the Plaintiff herein. I have read the foregoing Affidavit and believe to the best of my knowledge the contents thereof and the same is true to my knowledge, except as to matters therein stated on information and belief, and as to those matters I believe it to be true.

_____
Joel F. Holubar

Subscribed and sworn to before me this 15 day of June 2004

Notary Public _____

NINA JOSHI
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01J05028173
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES 5/23/2006